IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HEZEKIAH PINSON,

                                                                           OPINION AND ORDER

                    Plaintiff,

                                                                           19-cv-800-bbc

     v.

SEAN JAUCH,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Hezekiah Pinson was riding in the front passenger seat of a Lexus when defendant Sean Jauch, a Janesville police officer, initiated a traffic stop. The driver of the Lexus stopped the car, and plaintiff jumped out and ran away to hide. Plaintiff was later found and arrested by Janesville police officers. In this lawsuit, plaintiff contends that defendant violated his Fourth Amendment rights by effecting the traffic stop without reasonable suspicion that a crime had been committed.

      Now before the court are the parties' cross motions for summary judgment. Dkts. #44, 48. Because the undisputed facts show that defendant never seized plaintiff within the meaning of the Fourth Amendment, I am granting defendant's motion and denying plaintiff's motion.

      From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

1

UNDISPUTED FACTS

On January 17, 2019, at around 8:00 p.m., plaintiff Hezekiah Pinson was a passenger in a white Lexus that was parked outside a domestic abuse shelter in Janesville, Wisconsin. The Lexus had a temporary Illinois license plate. Defendant Sean Jauch, an officer with the Janesville Police Department, was patrolling the area in a marked police vehicle. He drove past the Lexus as it was idling outside the domestic abuse shelter. Defendant could see two people in the front seats, wearing baseball caps. Defendant decided to make an investigatory stop. He performed a U-turn at the next intersection and turned on his rear emergency lights. The Lexus then backed out of its parking spot and started driving away. Defendant turned on his front emergency lights and began following the Lexus. The Lexus turned onto another street and stopped. When the vehicle stopped, plaintiff exited from the front passenger side door and fled on foot. He hid in a construction site, where he was later found and arrested on an active arrest warrant by other police officers.

OPINION

The Fourth Amendment prohibits unreasonable seizures. California v. Hodari D., 499 U.S. 621, 624 (1991). An investigatory traffic stop is an unreasonable seizure if the police make the stop without reasonable suspicion that the person being stopped is involved in illegal activity. United States v. Shields, 789 F.3d 733, 745 (7th Cir. 2015). Plaintiff contends that defendant subjected him to an unreasonable seizure and violated his Fourth Amendment rights, by stopping the Lexus without reasonable suspicion that the passengers

of the Lexus were violating the law. Plaintiff spends a significant portion of his brief arguing about whether defendant had enough facts to support reasonable suspicion at the time he initiated the stop. However, plaintiff's claim fails on a threshold issue: he has not shown that he was ever seized within the meaning of the Fourth Amendment.

A person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. United States v. Mendenhall, 446 U.S. 544, 554 (1980). In addition, the officer must apply physical force to the person seized or, where force is absent, the person seized must submit to the assertion of authority. Hodari D., 499 at 626–27. "Submission" requires, at minimum, that a person yield to or manifest compliance with law enforcement directives. Tom v. Voida, 963 F.2d 952, 957 (7th Cir. 1992) ("A seizure requires not only that a reasonable person feel unfree to leave, but also that the subject actually yield to a show of authority from the police or be physically touched by the police."). If the person does not submit, but flees instead, there is no Fourth Amendment seizure. Hodarid D., 499 U.S. at 626 ("[The Fourth Amendment] does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure."); Kernats v. O'Sullivan, 35 F.3d 1171, 1178 n. 4 (7th Cir. 1994) ("[A] fleeing suspect—even one who is confronted with an obvious show of authority—is not seized until his freedom of movement has been terminated by an intentional application of physical force or by the suspect's submission to the asserted authority.")

In this instance, defendant did not physically seize plaintiff. Nor did plaintiff submit to defendant's assertion of authority. Although most people would not have believed that they were free to run away once a police officer initiates a traffic stop, plaintiff did not comply with defendant's traffic stop. As soon as the Lexus pulled over, plaintiff jumped out of the car, ran away and hid. The first time that plaintiff submitted to any officer's show of authority was when he was arrested at the construction site, by other officers. Because plaintiff did not submit to defendant's authority, he was not seized within the meaning of the Fourth Amendment.

Plaintiff argues that when defendant activated his sirens and ordered the driver of the Lexus to stop, and the driver did stop, plaintiff was seized within the meaning of the Fourth Amendment. He cites Brendlin v. California, 551 U.S. 249 (2007), in support of his argument, but Brendlin does not support plaintiff's position. The Brendlin case involved a normal traffic stop, in which the driver and passenger of a vehicle being stopped by police submitted to the show of authority by pulling over and awaiting the arrival of a police officer; in that scenario, the driver and other occupants of the vehicle were deemed to be seized when the vehicle came to a halt on the side of the road and the passengers remained inside. Id. at 252, 263. The Supreme Court emphasized in Brendlin that there can be no Fourth Amendment seizure "without actual submission." Id. at 254.

In contrast to the scenario in Brendlin, courts have consistently held that a driver's temporary halt of a vehicle, followed by the driver or passenger fleeing on foot or speeding away, does not constitute acquiescence to police authority. See, e.g., United States v.

4

Seymour, 739 F.3d 923, 928–29 (6th Cir. 2014) (defendant did not submit to police authority and was not seized where, as his car slowed to a stop, defendant "leaped out" of it and ran); United States v. McCauley, 548 F.3d 440, 443–44 (6th Cir. 2008) (passenger who ran inside house after car stopped was not seized until he later submitted to officer's orders); United States v. Baldwin, 496 F.3d 215, 218–19 (2d Cir. 2007) (driver was not seized where he stopped in response to patrol car's overhead lights and siren, but sped away when police officers approached vehicle on foot); United States v. Washington, 12 F.3d 1128, 1132 (D.C. Cir. 1994) (defendant not seized when he stopped his car at curb in response to police commands, but then sped away when officer approached on foot); United States v. Silcott, 377 F. Supp. 3d 1272, 1278–79 (D. Kan. 2019) (defendant who stopped vehicle and then fled was not seized); United States v. Garrette, No. 3:17CR022/MCR, 2017 WL 3337258, at *2–3 (N.D. Fla. Aug. 4, 2017), aff'd, 745 F. App'x 124 (11th Cir. 2018) (same); Garth v. City of Chicago, No. 08 C 5870, 2009 WL 3229627, at *2–3 (N.D. Ill. Oct. 2, 2009) (same).

In sum, Fourth Amendment case law makes it clear that to "seized," a person must do more than stop temporarily in response to police authority. The person must actually submit to police authority. Applying these principles to this case, the stopping of the Lexus on the side of the road, followed by plaintiff's running away and hiding, does not constitute acquiescence to police authority. Plaintiff's flight is the opposite of submission. Therefore, he was never seized by defendant within the meaning of the Fourth Amendment. At most, defendant attempted to seize plaintiff. Attempted seizures, however, are beyond the scope

of the Fourth Amendment. County of Sacramento v. Lewis, 523 U.S. 833, 845 n. 7 (1998). Accordingly, defendant is entitled to summary judgment.

ORDER

IT IS ORDERED that

1. Plaintiff Hezekiah Pinson's motion for summary judgment, dkt. #48, is DENIED.

2. Defendant Jauch's motion for summary judgment, dkt. #44, is GRANTED.

3. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 5th day of February, 2021.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge